# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 17-250V
### (Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
NEONA MARTIN, on Behalf of the        *
Estate of JOSEPH JAMES MARTIN,        *
                                      *
              Petitioner,             *
                                      *
       v.                             *
                                      *
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
              Respondent.             *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Chief Special Master Corcoran

Filed: September 3, 2020

Attorney's Fees and Costs;
Hearing; Utility of expert
opinion

*Milton Clay Ragsdale, IV*, Ragsdale LLC, Birmingham, AL, for Petitioner.

*Catherine E. Stolar*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On February 21, 2017, Neona Martin, on behalf of the estate of Joseph James Martin (her deceased husband), filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] alleging that Mr. Martin died on February 26, 2015, as a result of the influenza ("flu") vaccine he received on February 5, 2015. Petition (ECF No. 1). Petitioner now requests a final award of attorney's fees and costs in the amount of $142,302.55,

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). This means that the Decision will be available to anyone with access to the internet. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

plus $215.31 in costs personally incurred by Petitioner. *See* Motion for Final Award of Attorney's Fees and Costs, filed Aug. 24, 2020 (ECF No. 51) ("Final Fees App."). For the reasons set forth below, I hereby grant the motion in part, awarding a total sum of $137,641.61 (representing $102,494.25 in attorney's fees, $34,932.05 in attorney's costs, and $215.31 in costs personally incurred by Petitioner).

### Factual and Procedural Background

The primary attorneys to have worked on this case were Clayton Ragsdale and Alison Riley of the law firm Ragsdale LLC (the "Ragsdale Firm"), in Birmingham, Alabama. The filed billing invoices reveal the work they performed on the matter. *See generally* Ex. C to Interim Fees App at 2-10 (ECF No. 46-3); Ex. 2 to Final Fees App. at 2 (ECF No. 51-2). According to the billing record, the Ragsdale Firm began working on the case in June 2015—more than a year and one-half before the Petition was initiated. *See* Ex. C at 2. While it is not entirely clear why the facts of this case warranted working up the claim for eighteen months prior to its filing, my review of the record demonstrates that counsel diligently prepared the matter for litigation, including review by an expert. Otherwise, throughout that time period, the majority of work performed included reviewing medical records, as well as communicating with Petitioner and reviewing relevant case law. There is no evidence in the billing record that the Ragsdale Firm attorneys were overworking the case prior to its initiation or thereafter.

After the matter was filed, it proceeded in a timely manner. The parties filed a joint statement of completion on June 30, 2017 (ECF No. 9). After the filing of Respondent's Rule 4(c) Report in August 2017, the parties began the process of obtaining expert reports relevant to their positions in the case. After all expert reports were largely completed in the winter of 2019, a two-day entitlement hearing was held on February 3-4, 2020. I thereafter issued a decision denying entitlement to compensation on July 17, 2020. Entitlement Decision, filed July 17, 2020 (ECF No. 48). That Decision was not appealed.

Petitioner first requested an interim award of attorney's fees and costs on July 2, 2020, shortly before the Entitlement Decision issued. Motion for Interim Attorney's Fees and Costs, filed July 2, 2020 (ECF No. 46). Petitioner has since revised its fees request slightly, and has now filed a motion for a final award of attorney's fees and costs.[3] *See generally* Final Fees App. Petitioner requests a final award of $142,302.55—$102,494.25 in attorney's fees, plus $39,808.30 in costs—for the work of two attorneys, Mr. Ragsdale and Ms. Alison Riley, Esq., as well as the supportive work of two paralegals. Final Fees App. at 3–4. The costs requested include medical record retrieval charges, mailing expenses, expert fees, and travel expenses incurred to attend the

---

[3] Petitioner has indicated that her Motion seeking a final award of fees and costs should supplement her previous Motion seeking an interim award. Final Fees App. at 1.

entitlement hearing. Ex. D at 2–3. The more recently-filed request asks for approximately two-thousand dollars less than what was requested in the initial fees motion (which sought $143,963.11 ($103,939.50 in attorney's fees, plus $40,023.61 in costs)).

For Mr. Ragsdale (a partner with thirty-five years of experience), Petitioner asks for a rate of $385 per hour for work completed in 2015 and 2016; $400 per hour for work performed in 2017; $410 per hour for 2018; $420 per hour for 2019; and $430 per hour for 2020. Final Fees App. at 4. For Ms. Riley (an associate with seven years of experience), Petitioner asks for $225 per hour for work performed in 2015, $250 per hour for work in 2016, $270 per hour for work in 2017; $290 per hour in 2018; $305 per hour in 2019; and $340 per hour in 2020. *Id.* Petitioner also (in keeping with the Vaccine Program's practice) asks for a half-rate for instances of attorney travel (most of which occurred in connection with appearance at the 2020 hearing). *Id.* Lastly, Petitioner requests rates of $135–$155 per hour for worked performed by one paralegal throughout the case, with a second billed at the lesser rate of $75 per hour for work performed only in 2015. *Id.*

Petitioner additionally requests $215.31 for costs she personally incurred. Final Fees App. at 3, 5; General Order No. 9, filed as Ex. 1 to Final Fees App. on Aug. 24, 2020 (ECF No. 51-1) ("Ex. 1"). Petitioner's personal costs include hotel and travel expenses related to her attendance at the entitlement hearing. *See* Ex. 1.

Respondent reacted to the fees request on August 31, 2020. *See* Response, dated Aug. 31, 2020 (ECF No. 52). He indicates in his Response that he is satisfied that the statutory requirements for an attorney's fees and costs award have been met in this case but defers to my discretion the calculation of a proper amount to be awarded. *Id.* at 2–3.

## ANALYSIS

### A.  Petitioner's Claim had Reasonable Basis

Although it did not ultimately succeed, Petitioner's claim had sufficient objective basis to entitle her to a fee award under the applicable reasonable basis analysis. Claims that the flu vaccine can cause or contribute to death have scientific legitimacy, and thus are not comparable to the kinds of claims (like those asserting autism as a vaccine injury) that have been discredited after repeated consideration. *See,* e.g., *Newcomb v. Sec'y of Health & Hum. Servs.*, No. 18-1393V, 2020 WL 1491780 (Fed. Cl. Spec. Mstr. Feb. 11, 2020) (stipulating to an award for damages where petitioner alleged that the flu vaccine contributed to or caused the death of the decedent). The claim also was bulwarked by expert opinions that were not frivolous or obviously poorly reasoned, even if I ultimately did not find them persuasive. There was enough evidence in the record to support the Petition's filing, and Respondent for his part does not otherwise contest reasonable basis. Accordingly, a final award of fees and costs in this matter is appropriate.

**B.  The Requested Attorney Rates and Time Billed are Reasonable**

The attorneys practicing at the Ragsdale Firm, in Birmingham, Alabama, have repeatedly been found to be "in-forum," and therefore are entitled to compensation at the forum rates utilized by the Office of Special Masters.[4] *See Ward v. Sec'y of Health & Hum. Servs.*, No. 18-1918V, 2020 WL ---, slip. op. at 3–4 (Fed. Cl. Spec. Mstr. Aug. 17, 2020); *Beasley v. Sec'y of Health & Hum. Servs.*, No. 18-1130, 2020 WL ---, slip. op. at 3–4 (Fed. Cl. Spec. Mstr. Aug. 13, 2020). Upon consideration, given the information proffered by Petitioner herein about Mr. Ragsdale and Ms. Riley along with their overall experience, the quality of their work, and their reputation in the legal community, I find that the rates requested are reasonable for the work completed herein and do not require reduction. I also find, after review of the billing records, that the work performed on the matter was reasonably incurred, and therefore make no reductions to the time billed. Thus, I award the full sum of $102,494.25 for attorney's fees.

**C.  Attorney Costs**

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are *reasonable. Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g., Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

The requested costs herein can be sorted into two different categories: general litigation costs, including costs associated with appearance at the hearing in this matter, and expert costs. The former category shall be awarded in full, for a total of $6,908.30.

The latter category, however, requires some discussion. Petitioner asks for an award of $32,900.00 in expert costs. $12,150.00 of that amount was incurred by Dr. Goldstein, who billed at a rate of $450 per hour for 22 hours of time plus travel to and from Washington, D.C. While the rate is somewhat on the high end for what the Program usually pays experts who have not previously testified in a Vaccine Act case, I balance that against the fact that (as is becoming clear) the Program may increasingly be paying below-market expert rates, as well as the fact that overall Dr. Goldstein's professional services and input were useful in resolving the case. I will accordingly award this sum in full.

---

[4]  *See* Office of Special Masters Attorneys' Hourly Rate Fee Schedule: 2019-2020, https://www.uscfc.uscourts.gov/node/2914 (last visited on Sept. 2, 2020).

Petitioner next requests $20,750.00 for Dr. Levin's time, based on a $500 hourly rate, but this costs component cannot be approved in the same wholesale manner. First, I have most recently awarded Dr. Levin only $400 per hour, and I do not find that an overall twenty percent rate increase has been justified, even though I am (as mentioned above) aware of the need to pay experts greater amounts for their work, given the realities of the market for their assistance. *See,* e.g., *Grant v. Sec'y of Health & Hum. Servs.,* No. 16-1446V, 2018 WL 5832137, at *4 (Fed. Cl. Spec. Mstr. Sept. 18, 2018). In order to be consistent with what I have awarded Dr. Goldstein, as well as my prior determinations, I will compensate Dr. Levin only at the rate of $450 per hour (with $225 per hour for the two hours of travel he incurred)—reducing the amount to be awarded for his time by **$2,075.00** ($20,750.00 – 18,675.00).

Next, I will not compensate Dr. Levin for the entirety of time billed to this matter. As the Entitlement Decision reveals, I did not particularly find Dr. Levin to be a credible expert—nor did his specific expertise in medicine generally, or immunology specifically, prove helpful in evaluating whether the flu vaccine likely caused or contributed to Mr. Martin's death. Indeed, Dr. Levin spends most of his time today as a practicing attorney, further diminishing the value of any opinion he might provide. He also has been noted in prior decisions to have significant credential and credibility problems—something I also have observed on instances in which he testified before me. *See Kreizenbeck v. Sec'y of Health & Hum. Servs.*, No. 08-209V, 2018 WL 3679843, at *31 (Fed. Cl. June 22, 2018) (rejecting conclusory opinion offered by Dr. Levin as unreliable and unpersuasive), *mot. for review den'd*, 141 Fed. Cl. 138 (2018), *aff'd*, 945 F.3d 1362 (Fed. Cir. 2020); *Bigbee v. Sec'y of Health & Hum. Servs.*, No. 06-663V, 2012 WL 1237759, at *30 (Fed. Cl. Spec. Mstr. (Mar. 22, 2012) (stating that "Dr. Levin's testimony in particular was extremely unhelpful—as would be expected from someone who practices law 99% of the time and thus medicine 1% and has not seen a patient since 1993").

Although I did not deem Dr. Levin's contributions in this case to raise especially objectionable or egregious issues on the same scale as that observed in past cases, he is of the group of experts who should not be further encouraged to testify in the Program. The fact that it can be difficult for petitioners to find a qualified and helpful expert does not mean that any and every expert should be welcomed, and their comments taken at face value—especially those with a history of discredited opinions in the Program. This is especially so given the ample time Dr. Levin was given to generate a useful, reliable expert opinion prior to the claim's filing. Under such circumstances I would expect overall a better expert opinion than what was offered.

My reasoned concerns about the utility of Dr. Levin as an expert in this case is not a criticism of counsel, who performed professionally throughout the case (reflected in the fact that their time is not being reduced) and who have not previously utilized Dr. Levin in other cases before me. But *all* Program counsel should be cognizant of how an expert has been received in prior decisions when retaining someone—and accordingly take care in who they retain. For this reason, and in keeping with my discretion to make across-the-board percentage cuts in time rather

than calculate reductions down to the penny, I find that Dr. Levin's award should be reduced overall by 15 percent—meaning that I award only **$15,873.75** ($18,675.00 – $2,801.25) for Dr. Levin's time.

### D. Petitioner's Costs

Petitioner submitted a statement in accordance with General Order No. 9 outlining costs she personally incurred during the course of litigation. *See* Ex. 1. These costs reflect the hotel and transportation expenses she incurred while attending the entitlement hearing in this matter. *Id.* Such costs are typical, and the specific amount requested—$215.31—is reasonable. Thus, I award the amount in full without reduction.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of a final fees award, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs. I therefore award a total of **$137,426.30**—representing $102,494.25 in attorney's fees and $34,932.05 in costs—in the form of a check jointly payable to Petitioner and Petitioner's counsel, Mr. Milton Clay Ragsdale. Additionally, I award $215.31 in costs personally incurred by Petitioner in the form of a check jointly payable to Petitioner and Petitioner's counsel.

|  | **Requested** | **Awarded** | **Difference** |
|---|---|---|---|
| Mr. Ragsdale | $68,554.00 | $68,554.00 | $0.00 |
| Ms. Riley | $26,913.25 | $26,913.25 | $0.00 |
| Paralegal | $7,027.00 | $7,027.00 | $0.00 |
| Attorney Costs | $39,808.30 | $34,932.05 | $4,876.25 |
| Petitioner's Costs | $215.31 | $215.31 | $0.00 |
| **Total** | **$142,517.86** | **$137,641.61** | **$4,876.25** |

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[5]

**IT IS SO ORDERED.**

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

<u>s/ Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master